NO. 07-02-0271-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 19, 2004



______________________________




CECIL WARD, APPELLANT



v.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF CASTRO COUNTY;



NO. B2767-0108; HON. ED SELF, PRESIDING



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

 Appellant Cecil Ward brings this appeal from his conviction of murder with the use
of a deadly weapon and his jury-assessed punishment of life imprisonment in the
Institutional Division of the Texas Department of Criminal Justice. We affirm the judgment
of the trial court.

 Appellant's court-appointed attorney has filed an Anders brief with this court in which
he states he has thoroughly examined the trial record and determined the appeal to be
without merit. See Anders v. California, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d
493 (1967); High v. State, 573 S.W.2d 807, 809-11 (Tex. Crim. App. 1978). Counsel has
also filed a motion to withdraw from his representation. He mailed a copy of the brief to
appellant and notified him of his right to file a pro se brief. Appellant has availed himself
of that opportunity and has now filed a pro se brief.

 In his pro se brief, appellant asserts four points of error. In those points, he asserts:
1) the trial judge abused his discretion in not conducting an initial hearing to determine his
competency to stand trial; 2) his conviction of murder is unconstitutional because of his
incompetency to stand trial; 3) the trial court reversibly erred and violated Texas Code of
Criminal Procedure article 42.07 in pronouncing sentence at a time when he was not
competent; and 4) he did not receive the effective trial assistance of counsel mandated by
the United States Constitution.

 The factual background of the charged offense is, in the main, uncontroverted. It
shows that during the early morning hours of July 20, 2001, or the late night hours of July
19, 2001, appellant appeared at the Castro County home of his niece and told her that he
had killed his wife Francis. He then went to his mother's house and informed her that he
had killed his wife and went to the house of a friend and told his friend that he had "killed
the bitch." Subsequently, he went to a convenience store in Dimmitt, announced that he
had killed someone, and asked that the police be notified. Upon their arrival, appellant
showed a Department of Public Safety officer his wife's body on a country road in Castro
County. As we have noted, at trial he was convicted of the offense of causing the death
of his wife by the use of a deadly weapon, namely, a motor vehicle.

 A person is incompetent to stand trial if he does not have: 1) a sufficient present
ability to consult with his lawyer with a reasonable degree of rational understanding, or 2)
a rational as well as factual understanding of the proceeding against the person. Tex.
Code Crim. Proc. Ann. art. 46.02 §1A(a) (Vernon Supp. 2004). A person is presumed to
be competent to stand trial unless proven to be incompetent by a preponderance of the
evidence. Id. art. 46.02 §1A(b).

 Reiterated, appellant's first pro se point is that the trial court reversibly erred in not
conducting a hearing in advance of the trial to determine whether a jury trial was necessary
to determine appellant's competency to stand trial. In relevant part, the Code of Criminal
Procedure provides that the trial court shall conduct a hearing on the issue of competency
in advance of trial upon the trial court's own motion or upon the written motion of the
defendant or his counsel "if the court determines there is evidence to support a finding of
incompetency to stand trial." Id. art. 46.04 §2(a).

 Such a hearing is only required if the evidence brought to the judge's attention is
such as to raise a bona fide doubt in the judge's mind as to the defendant's competency
to stand trial. In general, a bona fide doubt is only raised if the evidence indicates recent
severe mental illness, at least moderate mental retardation, or truly bizarre acts by the
defendant. Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997), cert. denied, 525
U.S. 299, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998). The Court of Criminal Appeals has
additionally explicated that, for the purpose of determining the necessity for this type of
hearing, a bona fide doubt is "whether there is some evidence, a quantity more than none
or a scintilla, that rationally may lead to a conclusion of incompetence." Alcott v. State, 51
S.W.3d 596, 600 (Tex. Crim. App. 2001) (quoting Sisco v. State, 599 S.W.2d 607, 613
(Tex. Crim. App. 1980)). The standard of review is whether the trial court abused its
discretion by failing to empanel a jury for the purpose of conducting a competency hearing. 
Moore v. State, 999 S.W.2d 385, 383 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216,
120 S.Ct. 2220, 147 L.Ed.2d 252 (2000).

 In this case, appellant's trial attorney filed a notice of his intent to raise an insanity
defense. The record shows that the trial court granted appellant's ex parte motion for the
appointment of a licensed psychiatrist to assist the defense in preparation for trial. Dr.
Elvira G. Pascua-Lim was appointed for this purpose. The record shows that Dr. Lim was
paid $2,081.25 for the doctor's services. It also shows that on November 1, 2001, the
State alleged that appellant was examined by Dr. Lim on September 24, 2001, and asked
to be furnished a copy of the report. Also on November 5, 2001, the State sought, and
obtained, a court order appointing Dr. Philip Davis, a forensic psychiatrist, to examine
appellant's competency and ordered appellant to submit to the examination. No report
from either psychiatrist is shown in the record nor did either psychiatrist testify. The record
does contain appellant's trial counsel's attorney fee submission form which shows that
counsel had various telephone conversations with Dr. Lim and forwarded the doctor "police
reports, etc." It also shows the allowance of a $2,500 fee to Dr. Davis for "Psychological
Evaluation Narrative Report" on December 2001, and for "Examination Narrative Report
Expert Witness Standby" on March 18, 2002. 

 Indeed, the only medical evidence introduced by appellant was a report by Dr. Victor
Gutierrez that primarily dealt with appellant's physical condition and did not express an
opinion nor deal with appellant's competency to stand trial. Suffice it to say that under this
record, the evidence was not sufficient to raise a bona fide question in the trial judge's mind
as to appellant's competency to stand trial. Parenthetically, we have not overlooked
appellant's extensive references to certain alleged reports and findings of Dr. Davis. 
However, as we noted, there is nothing in the record before us showing these asserted
findings and we are bound by the record. Our holding as to the evidentiary insufficiency
obviates the necessity for discussion of appellant's second and third points which also
arise from the trial court's asserted failure to properly consider his incompetency to stand
trial. Appellant's first three points are overruled.

 In his fourth and final point, appellant has challenged the effectiveness of his trial
representation. In assessing the validity of that claim, in this direct appeal, we make our
decision from the record before us. In our assessment, we begin with the presumption that
the representation was effective. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994). We assume that counsel's actions and decisions were reasonably professional and
motivated by sound trial strategy. Id. Additionally, it is appellant's burden to rebut this
presumption with evidence illustrating why trial counsel did what he did. Id. (refusing to hold
trial counsel's performance deficient given the absence of evidence concerning counsel's
reasons for choosing the course he did); see also Rodriguez v. State, 955 S.W.2d 171, 176-77
(Tex. App.-Amarillo 1997, no pet.); Davis v. State, 930 S.W.2d 765, 769 (Tex. App.-Houston
[1st Dist.] 1996, pet. ref'd); Kemp v. State, 892 S.W.2d 112, 114-15 (Tex. App.-Houston [1st
Dist.] 1994, pet. ref'd). There is no such evidence in this record and without it, we must
assume trial counsel had a legitimate reason for his actions. The record shows that counsel
had consulted with the court-appointed expert. We can only assume that the result of his
consultations was that the evidence would not help his client at trial. The record shows that
appellant made necessary objections during the course of the trial and secured the inclusion
of jury instructions favorable to appellant. In its seminal decision in Strickland v. Washington,
466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court explicated that the basic
standard for evaluating any claim of counsel ineffectiveness is whether trial counsel's conduct
so undermined the proper function of the adversarial process that the trial cannot be relied
upon as having produced a just result. This record does not support such a conclusion. 
Appellant's fourth point is overruled.

 In sum, all of appellant's points are overruled, counsel's motion to withdraw is granted,
and the judgment of the trial court is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish. 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004). 



ny such records or records similar to them into evidence in this case. 

 Further, appellant had previously worked for one employer for 14 1/2 years, but did
not request any accommodation until he had been there over seven years, at which time
he requested a volume control phone only after his supervisor asked if he wanted a better
telephone. After he left that employer, he worked at another job at which he requested no
accommodation because there was already a volume control telephone and his supervisor
spoke more loudly in his presence. There is no evidence the City had knowledge of this
information and, without more, does not make out a prima facie case that appellant has
a record of impairment that substantially limits a major life activity.

 We must next consider whether there is evidence that the City regarded appellant
as having a substantially limiting impairment. Under this standard, the City had to believe
that appellant had a substantially limiting impairment that he did not have or that he had
a substantially limiting impairment when the impairment was not so limiting. Morrison, 7
S.W.3d at 857. Simple awareness of an impairment is insufficient to prove the employer
regarded the employee as disabled. E.E.O.C. v. Exxon Corp., 124 F.Supp.2d 987, 998
(N.D. Tex. 2000). 

 Appellant claims that because he was terminated for his "general lack of ability to
comprehend," a fact issue has been raised that the City perceived appellant to be unfit for
the job because of his hearing impairment. First, we note that the referenced phrase,
which was a "general lack of ability to comprehend and follow instructions properly," was
a summation in a letter by Barbara Lester after a specific itemization of infractions
committed by appellant, including leaving primary animal containment doors unlocked,
leaving secondary containment doors open while away from the area, leaving two primary
and one secondary animal containment doors open and one tertiary animal containment
door open at the same time, inaccurate animal observations and documentations, failure
to follow standard operating procedures such as wearing a mask while hosing and cleaning
animal cages, failure to follow instructions about wearing a mask in the primate area when
he has a cold, and the existence of mold in a juice container and rancid juice on two
separate occasions. 

 Killam was appellant's immediate supervisor and conducted his two performance
evaluations, four work progress reports, and issued his written reprimand for leaving doors
unlocked or open, all upon which the decision to terminate was purportedly based.
Appellant testified that he believed Killam did not think he was really having trouble hearing
her and she did not perceive him as having a substantial limitation. He also did not name
any other zoo managers that perceived him as being substantially limited. Further, there
is no evidence that appellant was treated differently from any other employee who
requested a new radio or telephone. Proof that only creates a mere suspicion of a fact is
less than the scintilla of proof required to survive summary judgment. Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). 

 Appellant argues that McInnis v. Alamo Community College, 207 F.3d 276 (5th Cir.
2000) supports his proposition that the reference to his lack of ability to comprehend raises
a fact issue because the disability at issue in that case was speech related, and the
employer referred to the employee as having oral communication problems. However, that
court found there was a genuine fact issue as to whether the employee was regarded as
disabled because the compliance coordinator testified she could tell from his file that he
was disabled or perceived as such and there was a letter indicating that his transfer to full-
time teaching was an accommodation for his handicap, although he had not requested
such an accommodation. Id. at 281. No such evidence appears in the record before us. 
 We therefore do not believe appellant has made a prima facie case that he suffered from
a disability or was regarded as such, and the court's order granting summary judgment can
be sustained on that issue alone. 

 Because we have found that the summary judgment should be affirmed on the basis
discussed, it is not necessary for us to address whether appellant was treated less
favorably than non-disabled employees. The judgment of the trial court is affirmed. 


 John T. Boyd 

 Chief Justice


Do not publish. 

 

 
1. Analogous provisions of the Americans With Disabilities Act may be used to
interpret disability discrimination provisions under state law. Kiser v. Original, Inc., 32
S.W.3d 449, 452 (Tex.App.--Houston [14th Dist.] 2000, no pet.)